

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable E. W. Easterling
County Attorney
Jefferson County
Beaumont, Texas

Dear Sir:

Opinion No. O-1342
Re: Whether Article 7346 and Article
7347 of the Revised Civil Stat-
utes authorize a Commissioners'
Court to re-assess property on
which delinquent tax is due be-
cause said property was over
assessed and over valued origi-
nally.

We are in receipt of your letter of August 26,
1939, in which you request an opinion of this Department
as to whether or not Articles 7346 and 7347 give the Commis-
sioners' Court the authority to enter an order re-assessing
property for delinquent taxes under the facts as set out
in your letter, as follows:

"The Home Owner's Loan Corporation
is interested in approximately 1,000
pieces of property in Jefferson County,
and they are anxious that all delinquent
taxes on these properties be paid as
soon as practical. On examination of
the status of these properties it ap-
pears that in quite a number of in-
stances there are many years of back
taxes due, and also due to the fact
that the owners and former owners have
neglected their properties in quite
a number of cases, we have discovered that
the assessed valuation of said such pro-
perties is far in excess of true values."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable E. W. Easterling, Page 2

Article 7346, provides, in part, as follows:

"Whenever any commissioners court
shall discover through notice from the
tax collector or otherwise that any
real property has been omitted from
the tax rolls for any year or years
since 1884, or shall find that any
previous assessments on any real pro-
perty for the years mentioned are in-
valid, or have been declared invalid
for any reason by any district court
in a suit to enforce the collection
of taxes on said properties, they may,
at any meeting of the court, order a
list of such properties to be made
in triplicate and fix a compensation
therefor; the said list to show a
complete description of such proper-
ties and for what years such proper-
ties were omitted from the tax rolls,
or for what years the assessments are
found to be invalid and should be can-
celed and re-assessed, or to have been
declared invalid and thereby canceled
by any district court in a suit to en-
force the collection of taxes. No
re-assessment of any property shall be
held against any innocent purchaser of
the same if the tax records of any
county fail to show any assessment (for
any year so re-assessed) by which said
property can be identified and that the
taxes are unpaid. The above exception,
with the same limitation, shall also ap-
ply as to all past judgments of district
courts canceling invalid assessments."

Article 7347, provides:

"When said list has been so made up
the commissioners court may, at any meet-
ing, order a cancellation of such proper-
ties in said list that are shown to have
been previously assessed, but which

Honorable E. W. Easterling, Page 3

assessments are found to be invalid and
have not been canceled by any former order
of the commissioners court, or by decree
of any district court; and shall then
refer such list of properties to be as-
sessed or re-assessed to the tax assessor
who shall proceed at once to make an as-
sessment of all said properties, from the
data given by said list (the certificate
of the Comptroller as to assessments or
re-assessments made by the tax assessor
shall not be necessary as required under
Article 7207, but he shall furnish all
blank forms needed, that uniformity may
be had in all counties), and when com-
pleted shall submit the same to the com-
missioners court, who shall pass upon the
valuations fixed by him; and, when ap-
proved as to the values, shall cause the
taxes to be computed and extended at the
tax rate in effect for each separate year
mentioned in said list; and, in addition
thereto, shall cause to be added a penal-
ty equal in amount to what would be six
per cent interest to the date of making
said list from the date such properties
would have been delinquent had same been
properly rendered by the owner thereof at
the time and for the years stated in said
list; provided, that the certificate of
any tax collector given during his term
of office that all taxes have been paid to
the date of such certificate on any cer-
tain piece of property, which is fully
described in such certificate, or if the
tax rolls of any county fail to show any
assessments against such property suffi-
cient to identify it, and that the same
was unpaid at the dates such rolls may
have been examined to ascertain the con-
dition of any property as to taxes unpaid,
this shall be a bar to any re-assessment
of such property under this law for any
years prior to the date of such certificate,

Honorable E. W. Easterling, Page 4

or such examinations; provided, that the
property referred to, when re-assessed,
shall be held by an innocent purchaser,
who has relied upon the correctness of
such certificate, or the tax rolls here-
tofore referred to."

An assessment is not invalid where the same is
made in good faith, regardless of the amount of over as-
sessment. An invalid assessment is one which was void
ab initio because of non-compliance with statutory require-
ments surrounding the assessment or one which was made
fraudulently or one in which a fundamentally wrong scheme
of assessment was adopted.

In your letter you refer to this Department's
ruling on House Bill No. 456. This Opinion is No. O-930,
and is addressed to the Honorable George H. Sheppard,
Comptroller of Public Accounts. The following portion of
this Opinion directly answers the question you propound in
your letter:

"From the opinion of Judge Sharp,
in State v. Mallet Land and Cattle Co.,
88 S. W. (2) 471, we quote as follows:

"'The rule has been repeatedly an-
nounced that, in the absence of fraud or
illegality, the action of a board of
equalization upon a particular assessment
is final; and, furthermore, that such
valuation will not be set aside merely
upon a showing that the same is in fact
excessive. If the board fairly and
honestly endeavors to fix a fair and just
valuation for taxing purposes, a mistake
on its part, under such circumstances, is
not subject to review by the courts.
Texas and Pacific Ry. Co. v. City of El
Paso (Tex. Sup.) 85 S. W. (2) 245; Rowland
v. City of Tyler (Tex. Com. App.) 5 S. W.
(2) 756; Druesdow v. Baker (Tex. Com. App.)
229 S. W. 493; Duck v. Peeler, 74 Tex. 268,
11 S. W. 1111; State v. Chicago, R. I. & G.
Ry. Co. (Tex. Com. App.) 263 S. W. 249; Sun-
day Lake Iron Co. v. Wakefield, 247 U. S. 350,

Honorable K. W. Easterling, Page 5

38 S. Ct. 495, 62 L. Ed. 1154. However, the rule has been declared that if a board of equalization adopts a method that is illegal, arbitrary, or fundamentally wrong, the decision of the board may be attacked and set aside.'

"Other cases use the language that 'as a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or irregularity, is conclusive.' Port Arthur Ind. School Dist. v. Baumer, 64 S. W. (2) 412; Nederland Ind. School Dist. v. Carter, 73 S. W. (2) 935. When so used the words 'final' and 'conclusive' mean the same thing. The value of the property as fixed by the board of equalization is res adjudicata, subject only to being set aside for fraud or the adoption of a fundamentally wrong method of assessment."

As pointed out in the Opinion just quoted, the Courts have uniformly held that the Commissioners' Court does not have the authority to re-assess property upon the only ground that the original assessment was based on an over valuation. In the case of Hinkson v. Lorenzo Ind. School Dist., Court of Civil Appeals of Texas, Amarillo, 109 S. W. (2) 1008, the Court said as follows:

"The general rule is that an attack of the character here made by appellant upon assessment valuations made by a board of equalization cannot be justified in the absence of allegations and proof of fraud, or something equivalent thereto, such as lack of jurisdiction, an obvious violation of the law, or the adoption of a principle or method of establishing valuations or making assessments that is fundamentally wrong and which results in a substantial injury to the complainant. Mere differences of opinion, honestly entertained, though erroneous, will not warrant the interference of the courts. Druesdow v. Baker (Tex. Com. App.) 229

Honorable W. K. Easterling, Page 6

S. W. 493; Menardville Independent School
Dist. v. Moser (Tex. Civ. App.) 90 S. W.
(2) 578, 579; Lubbook Hotel Co. v. Lubbook
Independent School Dist. (Tex. Civ. App.)
85 S. W. (2) 776; Simkins v. City of
Corsicana (Tex. Civ. App.) 86 S. W. (2) 792;
State v. Mallet Land & Cattle Co., 126 Tex.
392, 88 S. W. (2) 471."

In the case of Nederland Independent School District
v. Carter et al, Court of Civil Appeals of Texas, Beaumont,
65 S. W. (2) 487, the Court said:
93

"We fully recognize the rule contended
for by the appellant that the decision of
a board of equalization upon a particular
assessment, in the absence of illegality,
fraud, or something equivalent thereto, is
conclusive. It is unquestionable the set-
tled rule in this state that the courts have
no supervisory control over boards of equali-
zation. State v. Mallet Land & Cattle Co.
(Tex. Sup.) 88 S. W. (2) 471, and Menardville
Independent School Dist. v. Moser (Tex. Civ.
App.) 90 S. W. (2) 578, and authorities cited."

We are of the opinion that the Commissioners' Court
of Jefferson County, Texas, would be unauthorized to pass an
order authorizing a re-assessment of the property in question
under the facts set out in your letter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Billy Goldberg_
Billy Goldberg
Assistant

BG:RS

APPROVED SEP 12, 1939

_Gerald C. Mann_
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BWB